# EASTMAN *v.* HOUSTON.

PATENTS; INTERFERENCE; DISCLOSURE; ABANDONED EXPERIMENT.

The testimony in an interference case involving a photographic roll-holder reviewed, and it appearing that the senior applicant claiming prior conception and disclosure failed to show disclosure, except by the testimony of witnesses who, testifying four years after the event, claimed to have seen the roller-holder box, but not the interior of the box, and a drawing, while no one of them was shown to have any acquaintance with the photographic art or with any branch of it, or to have had any intelligent comprehension of the thing exhibited, and no means of fixing the time, and the applicant himself was the only one who testified as to the identity of the contents of the box; and it further appearing that the applicant, an inventor and patent attorney, and with abundant means, suppressed his invention and concealed the device for more than four years after he claimed to have reduced it to practice and produced it only after an interview with the attorney of his rival, it was *held,* reversing a decision of the Commissioner of Patents, awarding him priority, (1) that there was no disclosure, in the sense of the patent law, which must be made ordinarily to persons competent to understand and appreciate the alleged invention; and (2) that the presumption was that there was nothing more than an abandoned experiment.

No. 173. Patent Appeals. Submitted March 15, 1901. Decided April 2, 1901.

HEARING on an appeal from a decision of the Commissioner of Patents, in an interference case. *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Frederick F. Church* and *Mr. Moritz B. Philipp* for the appellant.

*Mr. William N. Moore* and *Mr. Phillips Abbott* for the appellee.

Mr. Justice Morris delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference case.

The matter in controversy is stated as follows by the proper officers of the Patent Office:

" A photographic roll-holder consisting of a casing having a front opening, a film-support provided with an observation aperture therein, winding and supply chambers located in the rear of said support, winding and supply spools arranged in said chamber and spool-centering devices for said spools."

The appellee, David H. Houston, is the senior applicant: he filed his application on March 12, 1897. In his preliminary statement he says that he conceived the invention in November, 1892; that he made drawings of it in January, 1893; that he made a working roll-holder in the spring of 1893; and that he disclosed the invention to others in November of 1894. He does not appear to have made any effort to place it upon the market for sale or public use.

The appellant, George Eastman, who filed his application on August 23, 1897, alleges in his preliminary statement that he conceived the invention about December 1, 1895; that he made sketches of it and explained it to others about December 5, 1895; that the construction of a full-sized roller-holder was commenced soon thereafter and completed on or about January 23, 1896; and that about 5,000 of such roller-holders had been made and sold.

Upon the testimony the examiner of interferences found in favor of Eastman, the board of examiners and the Commissioner of Patents in favor of Houston; and from the decision of the Commissioner the case comes to us on appeal by Eastman.

The burden of proof is upon Eastman as the junior applicant. This he has sufficiently and satisfactorily borne so far as to show the substantial correctness of the allegations of his preliminary statement. So all the tribunals of the Patent Office have held; and, in fact, there seems to be no effort, either in the testimony or in argument on behalf of the appellee, to disprove Eastman's case otherwise than by showing anticipation of the invention by Houston in 1892 and 1893. Consequently it becomes wholly unnecessary for us to analyze or examine the testimony on behalf of Eastman.

Houston, the appellee, claims to have conceived the invention and fully reduced it to practice by the construction of a working machine in the years 1892 and 1893, and to have disclosed his invention to others in November of 1894. Of course, if he proves these facts, he must prevail: for these long antedate Eastman's conception. If he does not prove them, he fails: for he shows nothing else whatever done by him before the filing of his application for a patent, which was subsequent to the conception and reduction to practice by Eastman. The issue between the parties is, therefore, very sharply defined.

As evidence of his action, Houston has produced and introduced in evidence a sketch in lead-pencil, on which is written the date of January 8, 1893, which is designated in the testimony as "Exhibit A," and which is assumed to show the invention in controversy; and also a roller-holder box, designated in the record as "Exhibit B," which embodies the invention, and which is the identical full-sized machine claimed to have been made by him in the spring of 1893. This roller-holder he testified to have used three times, once in 1893, once again in 1895, and the third time in 1897, to take impressions, which, however, were not satisfactory and were thrown away. It was not *loaded,* as the expression is, that is, with the roller inserted ready for use, at any other time; and he never made any other machine. The reduction to practice which is claimed was by the construction of this one box in 1893. We agree with the Commissioner that it is a sufficient reduction to practice under the decisions in

the cases of *Coffee* v. *Guerrant*, 68 O. G. 279; 3 App. D. C. 497, and *Mason* v. *Hepburn*, 84 O. G. 147; 13 App. D. C. 86, if the construction of the roller-holder substantially as it now exists is sufficiently shown to have been accomplished at the time designated.

To prove disclosure of the invention by him in the years 1894 and 1895, and the possession by him at that time of the sketch "Exhibit A" and the roller-holder "Exhibit B," Houston has adduced the testimony of seven witnesses; and upon the degree of credibility to be attributed to this testimony and upon the materiality of what it shows depends the determination of the cause. It was accepted as sufficient by the board of examiners in the Patent Office and by the Commissioner of Patents; but we think that in this there was error. We concur with the examiner of interferences that it should be rejected.

It would probably serve no good purpose for us to analyze this testimony in detail, especially as it has been well and ably done by the examiner. We need only note some general features of it, bearing in mind at the same time the fact that Houston himself, although living at the time of his alleged invention and afterward on a farm near the town of Hunter, in the State of North Dakota, and engaged in farming, had been, and was then, and continued thereafter to be interested in the photograph business, had taken out several patents in connection with the art, apparently took out a patent in the years 1895–1896, became involved in litigation over one of his patents of this kind with the company with which the appellant was connected, and was or had been himself a solicitor of patents, well acquainted with the patent business. There is also the fact to be noted, as disclosed by the record, that there were during the taking of the testimony of these witnesses frequent interruptions of the cross-examination and apparent "coaching" of the witnesses by Houston, some of it possibly justifiable, but on the whole tending to throw discredit on the testimony.

Of the seven witnesses the first was a dealer in farm implements, who had been foreman on Houston's farm; the second

was a workman on the farm, who occasionally acted as foreman; the third was a blacksmith and wagon-maker in the town of Hunter; the fifth was a farmer who lived in the neighborhood; the sixth was a milliner, who was employed in Houston's family in 1893, and again in 1894; and the seventh was a paper-hanger in the town of Hunter. No one of them is shown to have had any acquaintance whatever of any kind with the photographic art or with any branch of it, or to have had any intelligent comprehension of the thing which was exhibited to them. These are the persons to whom disclosure of this invention is claimed to have been made. They, each and all, testify to seeing, either the drawing "Exhibit A," or the roller-holder box "Exhibit B," or both of them, in Houston's parlor in the house in North Dakota in the year 1894 or 1895 — one says in December of 1894, another says in the spring or summer of 1894, another in the fall of 1894, and others in the year 1895. They adhere to these dates with remarkable pertinacity, notwithstanding that they had no means whatever for fixing them and can give no satisfactory reason for such dates, had no interest in the subject-matter, and knew nothing whatever about it, and had, after the lapse of four or five years, nothing but their unaided memories whereby to fix the time. The extreme improbability of all this is perfectly apparent.

But if, by a stretch of the imagination, we assume that these witnesses were correct in their dates and correct in stating what they saw, yet no one of them testifies that the invention was explained to him, or that he knew anything about it, except, as one says, that it was something new, or, as another says, that it was something for taking pictures. No one can testify why it was exhibited to him, or what was said when he was called upon to see it. No one saw the interior of the roller-holder box, and no one knew what it contained. And one witness says that he was told not to tell any one "because they might get his invention."

Now, it is very plain that there was here no disclosure of the invention in the sense of the patent law. Even Houston himself, in his deposition, fails to show that he dis-

closed the invention to any one.  Of course, if it be the fact
that the roller-holder, as it now stands, contains the inven-
tion, and if it were satisfactorily shown that it is now pre-
cisely in the same condition as it was at the time at which
these witnesses claim to have seen it in the year 1894 or
1895, it might be assumed that there was sufficient disclosure.
But no one testifies to the fact of identity of the contents of
the box, except Houston himself, and his testimony cannot
be accepted as sufficient to establish the fact.   Disclosure, in
the sense of  the patent law, must be made ordinarily to
persons competent to understand and appreciate the alleged
invention.   Otherwise, there is no true disclosure.   We are
unable to find in the record any sufficient or satisfactory dis-
closure of the invention by the appellee at any time before
he came into the Patent Office with his application for a
patent.   The only proof that he had the invention at any
time before the date of that application, or before the day
on which the application was sworn to, is his own unaided
testimony; and this, of course, cannot be accepted without
corroboration.   When it is remembered, also, that he was
familiar with patents and  the requirements of the patent
law, and that he was himself a solicitor of patents, it is
incredible that he should have regarded as a disclosure of
his invention the exhibition which is claimed to have been
made by him of the sketch " Exhibit A " and the roller-
holder " Exhibit B " in the years 1894 and 1895.

Moreover, although stimulated, as he testifies, by an ad-
vertisement which appeared in a photographic publication
issued in 1892, and which indicated a demand for the in-
vention, he suppressed the invention and practically con-
cealed his device for more than four years after the time
at which he claims to have actually reduced it to practice;
and he produced it at last only after an interview with the
attorney for Eastman, in which the latter claims that there
was a disclosure to him that Eastman had the invention in
controversy.   The filing of the application immediately after
that interview, after it had been so long and without any
cause assigned withheld from the public, is a very suspicious

circumstance, of which no explanation is given. That Houston might have filed his application at any time during the four years which intervened between the spring of 1893 and March 12, 1897, if his own testimony is to be believed that he had the invention all the time, is perfectly plain. No reason whatever is given for his failure to do so. He had abundant means and ample opportunity to file his application; and yet he did nothing whatever until he found that there was a rival in the field who had actually reduced the invention to practice. What we said in the case of *Fefel* v. *Stocker,* 17 App. D. C. 317, is even more applicable in the present case than in that. There it was said:

"Long and unexplained delay in the application for a patent is always significant in such cases, especially when, as here, the parties in interest were actively engaged in the prosecution of other similar applications; and such delay raises a presumption which it is incumbent on the applicant to rebut by clear and satisfactory proof."

The presumption in such cases is that there was nothing more than a mere abandoned experiment.

We are of opinion that there is no sufficient testimony to show that the appellee, Houston, had the invention in controversy at any time before the date of his application for a patent, March 12, 1897, when the appellant had already reduced it to practice upwards of twelve months before that day, and had placed the device upon the market. And consequently it follows that there should be judgment of priority of invention for the appellant, Eastman.

The decision of the Commissioner of Patents is *reversed; and judgment of priority of invention is awarded to the appellant, George Eastman.*

*The clerk of the court will certify this opinion and the proceedings in the cause in this court to the Commissioner of Patents according to law.*