28 C.C.P.A.(Patents)
### SMITH v. KLIESRATH.
**Patent Appeal No. 4251.**

Court of Customs and Patent Appeals.
June 30, 1941.

Henry J. Lucke, of New York City (Harry F. Riley, of Washington, D. C., of counsel), for appellant.

Dawson, Ooms & Booth, of Chicago, Ill., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Judge.

This is an appeal in an interference proceeding from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner of Interferences awarding priority of the invention defined in the two counts in issue to appellee, Victor W. Kliesrath.

The interference is between a patent of appellant, No. 1,998,528, issued April 23, 1935 upon an application, serial No. 715,-859, filed March 16, 1934, and an application of appellee, serial No. 651,821, filed January 14, 1933. The said application of appellant is a division of his application, serial No. 693,290, filed October 12, 1933, which was predicated upon provisional specifications filed by appellant in Great Britain December 8, 1932.

The invention in issue relates to an automobile body and is sufficiently described in the counts, which are claims copied from the patent of appellant, and which read as follows:

"1. A vehicle body of the saloon type including a body shell, sheet metal sides to said sheel, a sheet metal base to said shell, reinforcement plates extending longitudinally at each side of the body, said reinforcement plates being disposed on edge within said body shell near the base thereof, and transverse members secured between said reinforcement plates, said plates and said transverse members stiffening and strengthening the lower portion of the body shell at which it is adapted to be supported on the road wheels.

"2. A vehicle body of the saloon type including a body shell, reinforcement plates extending longitudinally at each side of the body, said reinforcement plates being ·disposed on edge within said body shell near the base thereof, each of said plates being secured along its lower horizontal edge to said body shell and transverse members between the ends of said reinforcement plates, said plates and said transverse members stiffening and strengthening the lower portion of the body shell at which it is adapted to be supported on the road wheels."

Appellant, in his preliminary statement, set out the dates of filing his application in foreign countries. Appellee alleged in his preliminary statement that he conceived and disclosed the invention to others on or about July 15, 1932; that he reduced the invention to practice by filing his application January 14, 1933, and that he had been diligent in adapting and perfecting the invention since July 15, 1932.

During the motion period appellant moved to dissolve the interference and also to shift the burden of proof. The motion to dissolve was based upon the grounds of alleged informality in declaring the interference and of alleged non-disclosure of the invention in the application of appellee.

■ The Primary Examiner denied the motion to dissolve and granted the motion to shift the burden of proof. Therefore appellee is the junior party and to prevail must establish priority of invention by a preponderance of the evidence.

Appellee took testimony and appellant, relying upon his British record date of December 8, 1932, took testimony only in rebuttal of certain phases of appellee's proof.

The Examiner of Interferences held that the evidence showed the application of appellee was completed, except for signing and executing the oath, at least as early as November 30, 1932. He therefore awarded that date to appellee for conception. The application was executed on January 11, 1933 and was filed on January 14, 1933.

In his decision, the Examiner of Interferences stated:

"As the first to conceive, but the last to reduce to practice, it is necessary that Kliesrath show diligence from just prior to December 8, 1932, until his constructive reduction to practice on January 14, 1933.

"During this period, a trifle over five weeks, Kliesrath appears to have been engaged in his regular occupation on matters requiring his personal attention, and the application was executed in New York City on January 11, 1933.

"This short delay is deemed insufficient to negative diligence during the critical period. * * *" and held appellee to be entitled to the award of priority of invention.

The Board of Appeals, in affirming the decision of the Examiner of Interferences, was in accord with his reasoning.

The principal issue before us is whether or not the application of appellee is sufficient to disclose the subject matter of the counts. There are also the contentions by appellant that appellee did not exercise due diligence during the critical period, and that a certain drawing in the application of appellee was not proved to have originated with him.

■ Much of the argument of appellant is directed to the point that the application of appellee does not disclose "A vehicle body of the saloon type." By "saloon type" is meant the usual sedan type or closed body of an automobile. The application of appellee contains a drawing, Fig. 1, illustrating an automotive vehicle of the sedan type. The drawing discloses a body shell. Another drawing, Fig. 24, shows

that the body shell has sheet metal sides and a sheet metal base, together with reinforcement plates extending longitudinally at each side of the body near the base thereof and disposed on edge within the body shell. In connection with those figures, the specification states:

"This particular illustrative embodiment includes a rear or body section or unit comprising a novel base 10 shown in detail in Figures 23 and 25. This base not only forms a part of the body proper 12, (Fig. 1) which is mounted on the base 10 in the form shown in Figures 23 and 25, or which may be as in the form 12a a structural part of the base 10a as shown in Figures 24 and 26, but may also be regarded as a substitute for the usual chassis frame which I find it unnecessary to employ as a separate element of the vehicle."

In Fig. 2 of the application transverse members secured between the reinforcement plates are clearly shown. The transverse members are referred to in the application as "tubular parallel torque-resisting members" and as "reinforcing members." The construction mentioned, no doubt, stiffens and strengthens the lower portion of the body shell as required by the counts. That portion of the body shell "adapted to be supported on the road wheels," as described in the application of appellee, has reference to the rear wheels only. Appellant contends that appellee cannot make the counts as they should be construed to mean support on all of the road wheels. The Primary Examiner had this contention before him and disposed of it in the following language:

"It is urged by the party Smith that the expression in count one, 'said plates and transverse members stiffening and strengthening the lower portion of the body shell at which it is adapted to be supported on the road wheels' must be construed to include both the front and rear ends of the body, and therefore Kliesrath cannot make the claim because he shows transverse members (149) only at the rear of the body. However, it appears that the count is patentable and completely readable on Smith if only the rear wheels are considered and there is nothing in the Smith application which tends to restrict the meaning of the claim to a construction that includes both front and rear wheels."

On this phase of the case the Board of Appeals stated:

" * * * As above indicated, Smith shows these road wheels secured both forwardly and rearwardly to the transverse stiffening members but as the counts are drawn, there is no definite inclusion of any wheel supports and only a statement of adaptation of the lower portion of the body shell for support on the road wheels. Obviously, the lower portion of the Kliesrath shell is thus supported. The rear wheels are directly associated with the reinforcing tubes as in the Smith disclosure and the front wheels likewise are associated with the forward lower portion of the shell; not with any reinforcing tubular member, to be sure, but, as we read the counts, such a construction is not even inferentially required."

Count 2 is to be distinguished from count 1 only in specifying that the transverse members are "between the ends" of the reinforcement plates. It is contended that this expression should be held to mean that the transverse members are secured between both the front and rear ends of the plates. The count is not so worded and is broadly drawn. The transverse members disclosed by appellee, even though they are positioned only between the rear ends of the reinforcement plates, nevertheless, in our opinion, read on the count as drawn.

A careful examination of the involved application convinces us that there is a sufficient disclosure in the specification of appellee to warrant his making the claims constituting the counts.

The record shows that the application drawings of appellee, including Fig. 1, were completed by November 30, 1932, on which date photostatic copies thereof were made. These photostatic copies appear among the exhibits here. The draftsman who made the drawings appearing in the application identified four other exhibits which are preliminary drawings received by him from the office of appellee's patent attorney in September and October, 1932, in connection with the preparation of more detailed drawings. Those exhibits do not definitely show the specific structure defined by the counts. It does not appear affirmatively that appellee gave to either his draftsman or his counsel any drawing or sketch of Fig. 1, and the record shows that appellee left for Europe on September 30, 1932, and returned therefrom December 1, 1932. The application herein prepared by counsel for

1018

appellee, together with other patent application papers, was on appellee's desk when he returned and it appears that no changes in the involved application were made by him before it was filed. The record shows that the draftsman had been instructed by counsel for appellee to make, in addition to the said preliminary drawings, such figures as would "clearly show the structure." The draftsman further testified that Fig. 1 was a drawing of a blueprint that had been submitted to him. Since Fig. 1 and a description thereof were part of the application finished by November 30, 1932, which was sworn to by appellee and filed in his name, it must be assumed that the invention claimed in the application is his. The board properly stated in its opinion that:

"* * * It is well settled in interference practice that rights of priority cannot be defeated by a showing that the subject matter was the invention of some third party. The arguments made by appellant seem intended to establish some such situation."

See Tepas et al. v. Geldhof, 112 F.2d 800; 27 C.C.P.A., Patents, 1265, Raymond et al. v. Wickersham, 110 F.2d 863, 27 C.C.P.A.; Patents, 1079; and Rava v. Charlton, 104 F.2d 798, 26 C.C.P.A., Patents, 1398.

We have no doubt that the record on behalf of appellee is sufficient to show conception of the invention defined by the counts at least as early as November 30, 1932.

The critical period in this case is from just prior to December 8, 1932, appellant's earliest available date, to January 14, 1933, appellee's filing date, a period of between five and six weeks. During the times mentioned herein, including the critical period, appellee was "Vice-president of Bendix Products Corporation, director of engineering," with his office at South Bend, Indiana. He testified that after returning from Europe (December 1, 1932), "I stayed in the East several days then came back and found my desk piled up about a foot thick with all sorts of urgent matters and was called back to New York on some important conferences then came back for a few days and returned to New York for the Christmas holidays and stayed through until after the New York automobile show some time in January." Appellee's counsel argues that in view of the many demands on Mr. Kliesrath's time and energy the period of about six weeks to check and execute the involved application indicates a high degree of diligence. A reasonable interpretation of the evidence is that Kliesrath did everything else he had to do, and also took time off for the Christmas holidays and the New York automobile show, before he got around to considering the application, and that it was not until January 11, 1933, near the very end of the critical period that he went over the application and signed it. We cannot see, therefore how it can be successfully contended that Kliesrath has proved that he was diligent during the critical period.

In urging that appellee was diligent, counsel relies upon the case of Ex parte Hines, 1919 C.D. 67, wherein it was held that a period of approximately five weeks between execution and filing of an application does not indicate lack of diligence. As this court has previously held, "Each case where diligence is involved, rests and must be decided upon its own facts, and all the surrounding circumstances must be viewed and considered in determining whether there was sufficient diligence." Jones v. Evans, 46 F.2d 197, 203, 18 C.C.P.A., Patents, 866. In cases of this kind "there is no arbitrary rule or standard by which diligence may be measured * * *." Callaghan v. Gouverneur et al., 54 App.D.C. 140, 295 F. 961, 964. Counsel also relies upon Dickinson v. Swinehart, 49 App.D.C. 222, 263 F. 474. That case, however, is not pertinent here because the record there contained proof that the junior party had been in continuous communication with his draftsman, and had consulted with others, regarding the construction of his machine and the drawings therefor during the critical period. There is no such affirmative evidence in the instant case.

For the reason that the appellee failed to exercise diligence during the critical period herein, the decision of the Board of Appeals is reversed.

Reversed.