301 F.2d 947
 Tage Emanuel MORTSELL, deceased, Sala Maskinfabriks, A. B., assignee, Appellant,
v.
Errki A. LAURILA, assignor to Aktiengesellschaft fur Unternehmungen der Eisen-und Stahlindustrie, Appellee.
 Patent Appeal No. 6758.
 United States Court of Customs and Patent Appeals.
 May 4, 1962.
 
 Eric Y. Munson, New York City, for appellant.
 Connolly & Hutz, Wilmington, Del. (Werner H. Hutz, Wilmington, Del., of counsel), for appellee.
 Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*
 RICH, Judge.
 
 
 1
 This appeal is from the decision of the Board of Patent Interferences awarding priority to Errki A. Laurila, the junior party in interference No. 88,914.
 
 
 2
 The sole issue is whether Laurila sustained his burden of establishing by a preponderance of the evidence introduction of the conception of his invention into the United States prior to the effective filing date of Tage Emanuel Mortsell, the senior party.[1]
 
 
 3
 The subject matter of this interference relates to devices which separate magnetic and non-magnetic particles from a mixture of such particles.[2] In view of the sole issue presented for our determination, the two counts of the interference sufficiently indicate the subject matter. They are:
 
 
 4
 "1. A magnetic separator for separating magnetizable particles from unmagnetizable particles comprising a rotatable drum consisting of a rotatable disc, a rotatable annular cover member mounted coaxially with said disc in spaced relation thereto, said disc and said cover member being arranged to rotate independently of each other, said cover member being constructed of a dielectric material, a plurality of pole pieces mounted between said disc and said cover member, the space between said disc and said cover member being annularly uniform and having a predetermined minimum width.
 
 
 5
 "2. In combination, a rotatable drum comprising an inner rotatable member and an outer rotatable cover member coaxial with said inner member, a plurality of radially extending magnetic pole pieces between said inner and outer members, and a cylinder rotatably mounted adjacent said drum, said cylinder being adapted to rotate at the same speed but in the opposite direction relative to said drum, said cylinder having means on the periphery thereof for removing magnetically held particles from said drum."
 
 
 6
 The testimony on behalf of Laurila[3] comprises the testimony of Werner H. Hutz, a partner in the law firm of Connolly & Hutz which represents Laurila in this case, and Arthur A. Jacobs, a former employee of Connolly & Hutz, who prepared the Laurila application in its United States form. It appears from this testimony that Connolly & Hutz received, on or about March 12, 1954, a carbon copy of a letter dated March 9, 1954, from a German patent attorney, Dr. Louis, of Essen, Germany. Dr. Louis requested that a U. S. application be prepared from a seven page German language disclosure consisting of two pages of patent claims, seven pages of description, and four sheets of temporary drawings which were to accompany the original of Dr. Louis' letter.[4] Referring to certain remarks that appeared on the reverse side of this letter, Mr. Hutz testified:
 
 
 7
 "Now, the remarks on the reverse side of this carbon copy are substantially as follows:
 
 
 8
 "The present application should be filed as soon as possible in America without claiming a priority. The present application corresponds to applications previously filed in — then it [the letter] identifies a Swedish application filed December 16, 1952; a Finnish application filed February 23, 1953; and a German application filed June 29, 1953."
 
 
 9
 Dr. Louis' "remarks" continued by requesting: (1) a literal English translation of the German description and patent claims; (2) the prepared American application pages with an application disclosure, suitable for the United States; and (3) a prepared assignment to Aktiengesellschaft fur Unternehmungen der Eisen-und Stahlindustrie, Essen.
 
 
 10
 Mr. Hutz testified that upon receipt of this material, "the job of translating the German disclosure" was promptly assigned to his secretary, Miss Ilse Witt. There appears to be general agreement between the parties that Miss Witt's literal translation was "reasonably accurate." Miss Witt's translation was sent to Dr. Louis in Germany accompanied by a letter, the substance of which, Mr. Hutz testified, was in part:
 
 
 11
 "* * * we acknowledged receipt of the assignment to prepare an application and that we had immediately prepared a word for word English translation of the German text of which we were sending him copies. We hope that within the next weeks the American application papers, along with an assignment, can be sent to you via boat mail. We assume that you will send us the final formal drawings. If you wish that they be prepared here, please let us know immediately."
 
 
 12
 It was at this time that Mr. Jacobs undertook the job of preparing the Laurila United States patent application primarily from Miss Witt's English translation. As to the manner in which this was done, Mr. Jacobs testified as follows:
 
 
 13
 "* * * I made * * * pencil notations on the English translation * * * and rewrote the claims to correspond with claim terminology in U. S. patent practice in a manner which I considered would most effectively cover the invention disclosed in the specification and drawings.
 
 
 14
 "I then handed the English translation * * * with my pencil notations thereon, to my secretary * *. She then typed a ribbon and various carbon copies of the specification and claims as they would be filed in the U. S. Patent Office.
 
 
 15
 "* * * the specification and claims to be filed in the U. S. Patent Office, were mailed [on April 1, 1954] to Dr. Louis, together with an assignment which was prepared for the signature of Mr. Laurila assigning the application to Aktiengesellschaft fur Unternehmungen der Eisen-und Stahlindustrie, Essen.
 
 
 16
 "I also included, of course, a single signature oath, petition and power of attorney to be executed by the inventor at the time of executing the assignment."
 
 
 17
 To keep the chronological significance of these events before us, it was two weeks after this transmittal of the United States application papers to Dr. Louis, i. e., on April 15, 1954, that Mortsell filed his application in Sweden. Clearly, if the actions of the junior party up to April 1, 1954, do not amount to an introduction of a conception of his invention into the United States, the senior party, Mortsell will prevail, Laurila having taken no further action in the United States prior to April 15, 1954.[5]
 
 
 18
 Appellant attacks the sufficiency of Laurila's proof of introduction of a conception into the United States on two counts, namely, that there is no evidence that Laurila is the originator of the invention disclosed to Connolly & Hutz, and that the record does not show any corroboration of a conception in the United States prior to Laurila's constructive reduction to practice on May 20, 1954, by the filing of the United States application.
 
 
 19
 As to appellant's first ground, we note that there is no evidence indicating an originality issue as between the parties, i. e., an issue of derivation. Clearly, the burden of establishing the existence of such an issue is on Mortsell. Rider v. Griffith, 154 F.2d 193, 33 C.C. P.A. 884. Viewed in this light, we can only conclude that appellant's questioning of Laurila's having "made the invention which is the subject matter of the counts in interference" is merely an attempt to raise in this appeal the inapposite issue of third party inventorship.
 
 Appellant states in his brief:
 
 20
 "The Senior party does not contend that the right of priority as between a Junior and Senior party can be decided upon the ground that the invention was made by a third party * * *."
 
 
 21
 In view of this statement, we do not understand why appellant has raised this point at all. It is axiomatic that an interference is limited to a determination of priority and questions "ancillary" thereto. Third party inventorship is not one of these questions. We have frequently held that any evidence or lack of evidence going to this subject is not pertinent to the issue of priority as between the parties in a two party interference. Sherman v. Hope, Jr., 161 F. 2d 263, 34 C.C.P.A. 980; Smith v. Kliesrath, 120 F.2d 1015, 28 C.C.P.A. 1293, and cases cited therein, particularly at 120 F.2d 1018, 28 C.C.P.A. 1297;[6] Hess v. Dreyfuss, 104 F.2d 801, 26 C.C.P.A. 1407. Our decision on this point makes it unnecessary to consider the pertinence of the foreign-filed applications, mentioned in Laurila's application oath but not introduced in evidence before the Board of Interferences.
 
 
 22
 Appellant's second argument, that which concerns the alleged lack of "corroboration" of conception in the United States, assuming Laurila to be the inventor, proceeds as follows: (1) Laurila, as the junior party to this interference, had the burden of proving priority of invention by a preponderance of the evidence; (2) in Laurila's case this involves proving that the knowledge of his conceived invention must either have been brought to the United States or communicated to someone in the United States prior to April 15, 1954; (3) communication of the conception to someone in the United States may amount to corroboration if:
 
 
 23
 "* * * the person to whom the invention has been communicated was in such full and complete possessession of all details thereof and understood it, so that it could be reduced to practice by a person possessed of ordinary technical skill."
 
 
 24
 (4) since there is no proof that either Miss Witt or Mr. Jacobs understood the invention disclosure they dealt with, the board was in error in holding that "Laurila should be accorded a date of conception at least as early as the completion of editing of the English translation by Jacobs."
 
 
 25
 The board stated, concerning appellant's general corroboration argument:
 
 
 26
 "The requirement for corroboration by independent evidence of the testimony of one of the parties to an interference does not extend to testimony of witnesses other than the parties themselves. The testimony of such other witnesses is subject only to the usual consideration to determine its probative value. Here there is nothing to cast suspicion on the testimony of either Hutz or Jacobs, or on the documentary exhibits." [Emphasis ours.]
 
 
 27
 Appellant admits that Miss Witt's translation was "reasonably accurate." From what the record discloses of Miss Witt's qualifications it would appear that this admission was not unfounded. No allegation is made, nor does the record show, that the alterations of this translation made by Mr. Jacobs amounted to anything more than placing it in proper idiomatic English and in proper form for the Patent Office. Subsequent to Mr. Jacobs' preparation of the Laurila application it does not appear that any further alterations were made thereto. The record further shows that after receipt of the Laurila application the Patent Office at no time made any objection to the sufficiency of this disclosure, nor the operativeness of the disclosed invention. The application as filed, except for an omnibus claim cancelled by examiner's amendment, was passed to issue containing the very claims which are now the counts of this interference. We find such circumstances[7] irrefutably establish the existence in the United States, before April 15, 1954, of a complete written disclosure of an invention conceived by a person we must presume, for the purposes of this appeal, there being no contrary evidence, to be the applicant Laurila.
 
 
 28
 The facet of appellant's second argument involving the understanding of the Laurila invention by Miss Witt and Mr. Jacobs is rendered moot by the above disposition of this second argument.[8]
 
 
 29
 For the above reasons the decision of the Patent Office Board of Interferences is affirmed.
 
 
 30
 Affirmed.
 
 
 31
 MARTIN, Judge, sat but did not participate because of illness.
 
 
 
 Notes:
 
 
 *
 United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code
 
 
 [1]
 The Board of Patent Interferences, after finding that Laurila had proven a date of conception prior to any date of invention provable by Mortsell, held Laurila diligent up to the filing date of his United States application in the Patent Office. Appellant having neither alleged as error nor controverted in his brief this finding of diligence on the part of the board, that issue is not before us
 
 
 [2]
 Laurila is involved in the interference on the basis of his patent No. 2,711,249, issued June 21, 1955, on application Ser. No. 431,210, filed May 20, 1954. The patent is assigned to Aktiengesellschaft fur Unternehmungen der Eisen-und Stahlindustrie
 Mortsell, deceased, is involved on the basis of his application Ser. No. 500,963, filed April 12, 1955, and assigned to Sala Maskinfabriks Aktiebolag, of Sala, Sweden. Upon motion to shift the burden of proof, he was given the benefit of his application in Sweden No. 3622/1954, filed April 15, 1954, and he thus became senior party.
 
 
 [3]
 Mortsell took no testimony, electing to rely solely on the filing date of his application in Sweden
 
 
 [4]
 Mr. Hutz testified that "it was the practice of Dr. Louis * * * to forward the carbon copy air mail and subsequently send us the original in the form of a confirmation copy that came by boat mail."
 
 
 [5]
 See footnote 1. We note for the sake of completeness that Laurila executed the U. S. application papers on May 3 and 5, 1954, and the assignment on May 5, 1954. The executed papers were then forwarded by Dr. Louis to Connolly & Hutz on May 11, 1954. Receipt of these papers was acknowledged by Connolly & Hutz on May 18, 1954. The Laurila application was forwarded to the Patent Office on May 19, 1954, and filed on May 20, 1954
 
 
 [6]
 We do not attempt to distinguish the instant case from that of Brown, Jr. v. Barton, 102 F.2d 193, 26 C.C.P.A. 889, where the court did consider the question of third party originality as it related to the junior party Barton and his attorneys Goldsborough and Greenberg and their draftsman. The question in that case involved a determination of when and by whom an element in one figure of the drawing was added. We merely note that in Smith v. Kliesrath, supra, an almost identical factual question was presented. The question there was when and by whom a drawing or sketch of one figure of the application drawing was presented to a draftsman. In the Smith case this court did not mention the Brown, Jr. case but instead quoted with approval the board's statement that:
 "* * * [sic] It is well settled in interference practice that rights of priority cannot be defeated by a showing that the subject matter was the invention of some third party. The arguments made by appellant seem intended to establish some such situation."
 We believe that the rule stated in Smith v. Kliesrath, in the cases cited therein, and in the Hess and Sherman cases, supra, is the proper rule of law.
 
 
 [7]
 It is not a thought new to this court that the existence and content of a document relied on to prove conception may be proved by circumstantial evidence. See Levy v. Gould et al., 87 F.2d 524, 24 C.C.P.A. 910
 
 
 [8]
 The instant case is distinguishable on its facts from those cases where theoriginal content of invention disclosures, either written or unwritten, is in dispute. The opinion in Eastman v. Houston, 18 App. D.C. 135, 1901 C.D. 386, 95 O.G. 2064, is pertinent in this regard. In the Eastman case the court, after holding that the witnesses to Houston's "disclosure" of his invention lacked "any intelligent comprehension of the thing which was exhibited to them," stated:
 "Of course, if it be the fact that the roller-holder, as it now stands, contains the invention, and if it were satisfactorily shown that it is now precisely in the same condition as it was at the time at which these witnesses claim to have seen it in the year 1894 or 1895, it might be assumed that there was sufficient disclosure." We note that the court expressly avoided setting forth any inflexible rule when it stated further:
 "Disclosure, in the sense of the patent law, must be made, ordinarily to persons competent to understand and appreciate the alleged invention." [Emphasis ours.]