**Kent C. LAZO, Appellant,**

v.

**Tien C. TSO and George L. Steffens, Appellees.**

**Patent Appeal No. 8946.**

United States Court of Customs and Patent Appeals.

July 12, 1973.

Richard C. Witte, Robert B. Aylor, Cincinnati, Ohio, Dugald S. McDougall, Chicago, Ill., attorneys of record, for appellant.

Rubin Hoffman, Washington, D.C., attorney of record, for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Patent Interferences, adhered to on reconsideration, awarding priority of invention of the count to the senior party, Tso et al. (Tso). Tso is involved on application serial No. 443,106, filed March 26, 1965. Lazo is involved on application serial No. 473,193, filed July 19, 1965.[1] A third party, Findley et al., has not appealed the decision.

The board's decision centered on the holding that Tso had prior conception of the process of the count. We affirm.

*The Subject Matter*

The sole count reads:

1. A method of inhibiting the growth of suckers in tobacco plants which comprises applying to said plants an effective amount of a saturated $C_3$ to $C_{18}$ alcohol.

"Suckers" are axillary buds which appear after tobacco plants have been topped and are undesirable because they reduce the energy available for growth.

*The Board Decision*

The board found as a fact that Tso had submitted a projected plan for research on sucker control (Tso Exhibit 1) on May 28, 1963 which included as materials to be tested:

Saturated and unsaturated long-chain aliphatic compounds, including primary, secondary and tertiary alcohols, related ketones, acids, and esters.

The board also found that a report of a trip by Tso to Emery Industries, Inc. in October 1963 (Tso Exhibit 3) included the statement that Emery was willing to supply various fatty acid derivatives for testing and also to "supply other derivatives of C–9 fatty acids such as alcohol, aldehyde, ethyl esters, and other related compounds in pint quantities for our evaluation in greenhouses as well as in the field."

The record for Lazo, on the other hand, was found to establish that Lazo's first activity came after reading an article in the *Oil, Paint & Drug Reporter*, published in December 1963, which described work done by Tso demonstrating effective sucker control with fatty acids and esters. The first written mention by Lazo of the use of alcohols in this area was in a letter to Tso on January 28, 1964 (Lazo Exhibit 3) wherein the belief was set forth that "some of the fatty alcohols might show promise * * * particularly the octyl and decyl fractions or the blend thereof." At the same time samples were offered to Tso for evaluation at the United States Department of Agriculture (USDA) facilities.

It is agreed that the reduction to practice occurred in tests run at USDA in March and April of 1964 under the supervision of co-inventors Tso and Steffens and using the fatty alcohol samples supplied by Procter and Gamble.

On this record, the board concluded that

* * * at least by October 22, 1963, the date of the report * * * [Tso Exhibit 3] Tso et al. were in possession of the conception of the use of a saturated C–9 alcohol for inhibiting sucker growth on tobacco plants. The plan for research * * * [Tso Exhibit 1] and the testimony in connection therewith clearly show that Tso et al. contemplated the use of saturated long chain aliphatic alcohols for inhibiting suckers on tobacco and the report of Tso's trip * * * specifically refers to C–9 fatty alcohol for

1. Tso et al. were employees of the United States Department of Agriculture and

Lazo was an employee of Procter and Gamble Company.

this purpose. Whether Tso et al. made any attempt to obtain this or [any] other alcohol within the scope of alcohols recited in the count is not material to our conclusion as the testimony and above exhibits establish that Tso et al. were in possession of a prior conception of the process of the count.

Having held Tso to have been in possession of the conception prior to Lazo's letter, the board sttaed:

[I]t cannot be said that a conception of the invention was first conveyed from Lazo to Tso et al. or that Tso derived the invention from Lazo.

Lazo's claim that the work done at USDA was in effect a reduction to practice on his behalf was overruled:

[S]ince Tso et al. had the prior conception of the process of the count, experimental work carried out by them and their associates at USDA must necessarily be for their own benefit rather than for Lazo. The fact that P and G may have supplied alcohols that were used in the experiments carried out does not indicate that the work was for the benefit of Lazo or P and G. The source of the chemicals used cannot alone determine for whose benefit the work was done. Even if it were held that the experimental work was for the benefit of both Tso et al. and Lazo (a simultaneous reduction to practice) Lazo could not prevail since Tso et al. had the first conception.

## OPINION

Appellant has raised issues of equity, contract and agency law, public policy and third party inventorship, as well as the basic issue of originality or derivation of the invention by Tso from Lazo. We limit our discussion, however, to the matter of first conception, which answers the question of priority before us.

■ Appellant contends that the two documents which formed the basis for the board's award of prior conception of the count (the research plan and trip report) are "mere summaries of intended research, broad as all outdoors." It is urged that such a generic disclosure without any guide indicating this particular selection cannot be construed as a conception of the narrow subject matter of the count.

We cannot agree with that analysis of these two documents. The research plan sets forth the basic concept of testing the inhibition of sucker growth with "saturated and unsaturated fatty acids and their derivatives" as well as the saturated and unsaturated long-chain aliphatic compounds noted by the board. Although many other naturally occurring compounds are included within the total disclosure of the plan, we think the two documents, and testimony pertinent thereto, provide the necessary evidence that Tso had conceived the subject matter of the count.

Tso's testimony and his written request for authorization to visit Emery (Tso Exhibit 2) make it clear that he had already run tests using some fatty acid derivatives and obtained "encouraging results" by September 18, 1963. His trip was to learn more about the composition, properties, potential supply, etc., of the derivatives which had been provided by Emery. The report of a meeting with Emery personnel on October 14, 1963 states that "[a]mong the 26 fatty acid derivatives they supplied, we found that those materials with 8 to 12 carbons were most effective." It goes on to say that "[a]n odd-numbered carbon material Emery supplied * * * and very promising is found to be a 9–carbon compound." In a discussion of sources of supply there is a reference to the "C–9 compound monobasic *saturated* [our emphasis] pelargonic acid [which] is an ozonation product of naturally occurring fats * * *." Finally we find the offer to supply "other derivatives of C–9 fatty acids such as alcohol, aldehyde, ethyl esters * * *." Tso's testimony with respect to this trip included the statement:

They supplied to us fatty esters to start with. From that discussion we knew that the fatty esters in the

range of C–8 to C–12 area was quite effective. So automatically our discussion led to the subject of fatty alcohols, and their interest, of course, particularly they have, as I understand, the C–9 material at that time, they have C–9 alcohol.

Other testimony indicates that Tso had also tested fatty acids but had encountered problems in that "acid was burning the tobacco leaf * * *."

Hence we find no error in the board's determination that Tso had conceived of the use of a saturated C–9 alcohol for inhibiting sucker growth by October 22, 1963. The evidence establishes that Tso not only had developed a master plan which contemplated future testing of such a compound but also had carried out research with related fatty acid derivatives and obtained encouraging results. The conclusive indication in the direction of the fatty alcohols per se was the discussion at Emery.

Having determined that it was Tso who had the prior conception, we are necessarily led to agree with the board's holding that the reduction to practice must inure to the benefit of Tso. Cf. Whittier v. Borchardt, 154 F. 2d 522, 33 CCPA 1023 (1946). As pointed out by the board, this case is readily distinguishable from the situation in Applegate v. Scherer, 332 F.2d 571, 51 CCPA 1416 (1964), wherein Scherer had the thought and thus was credited with conception of the invention and Applegate merely ran the test necessary for reduction to practice after communication of the invention by Scherer.

The board dismissed the claim of third party inventorship as not ancillary to priority. Swain v. Mallory, 329 F.2d 982, 51 CCPA 1242 (1964); Mortsell v. Laurila, 301 F.2d 947, 49 CCPA 1028 (1962). We find no error in that action.

Accordingly, the decision of the board is affirmed.

Affirmed.