# OLIVER v. FELBEL.

INTERFERENCE; APPEALS; PATENTABILITY; PRIORITY OF INVENTION; DISCLAIMER OF INVENTION; DILIGENCE; REDUCTION TO PRACTICE.

1. Under the act creating this court, before the court can review a decision of the Commissioner of Patents and determine the right of ownership as between rival claimants for a patent, there must be an adjudication of patentability final to all ordinary intents and purposes, as there can be no interference unless there is patentable invention.

2. There cannot be said to have been a final adjudication of patentability in an interference case where the primary examiner, deciding adversely to the contention of one of the parties, has held the claim to be patentable, while the board of examiners in chief, although expressing the opinion that the claim is not patentable, has affirmed the decision of the examiner upon the question of priority of invention, and the Commissioner, in affirming the board, expresses no opinion as to patentability, but states that this could be considered by the primary examiner when the case should go back to him for the determination of the interference.

3. The proper practice, under such circumstances, would be for the Commissioner to reserve the cause until he has referred the question of patentability back to the primary examiner and there has been a definite adjudication of the latter question; after which his determination of the issue of interference would present a cause for the cognizance of this court.

4. Where the record in an interference case shows that one of the parties to the interference deliberately stated, in answer to a question of his counsel, that he did not claim to be the inventor of the matter in controversy, priority of invention cannot be awarded to him.

5. When there has been no fraudulent concealment or suppression of an invention to keep it from the public, or abandonment thereof as an unsuccessful experiment, nor an unreasonable delay in applying for a patent, the device having been speedily reduced to practical operation, the fact that another party put a similar device upon the market earlier and applied a few months sooner for a patent, will not deprive the first inventor of his rights to a patent;

the diligence required of an inventor being rather diligence in the reduction to practice than in application to the Patent Office, or in manufacturing his device for public use.

No. 200. Patent Appeals. Submitted May 14, 1902. Decided June 6, 1902.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.      *Affirmed.*

The COURT in the opinion stated the case as follows:

This is an appeal from the decision of the Commissioner of Patents in an interference case, wherein the subject-matter of controversy is an alleged improvement in type-writing machines, described in the following one issue in the cause:

"In a type-writing machine, the combination with type-operating mechanism and a power-driven carriage, of a tabulating mechanism including a series of denomination-keys and a series of independently-movable stops connected thereto, and also including an independent release-key for the carriage, the construction and arrangement being such that any key may be operated to set its corresponding stop, and such that said release-key may then be operated to enable the carriage to move rapidly to the point determined by the setting of said stop."

The alleged invention consists in the separation of the release-key from the denomination-keys of the tabulating mechanism, a separation which the appellant claims to be a step backward in the art, and which, notwithstanding that he accepted the issue as formulated in the Patent Office, he now seeks to have regarded as wanting in patentable novelty, but which the appellee claims to have the effect of removing certain tendencies in previously-existing mechanism to superinduce mistakes on the part of the operator.

The appellant, Thomas Oliver, filed his application for patent on July 17, 1899, and is the senior applicant. In his preliminary statement he alleged that he had conceived the invention, disclosed the same, and made drawings of it, during the period between April 7 and May 7, 1899; that he

had constructed a full-sized operative machine embodying the invention between May 1 and June 1, 1899; and that since June 1, 1899, large numbers of such machines had been manufactured and sold.

The appellee, Jacob Felbel, filed his application for patent on December 18, 1899, which was five months later than the application of his opponent. In his preliminary statement he alleged that he had conceived the invention in issue, made sketches and drawings of it, and began the construction of full-sized working drawings, on or about May 20, 1898; that he showed these drawings, and explained the invention to others about May 25, 1898; that the construction of a full-sized machine, embodying the invention, was immediately commenced and was completed on or about July 20, 1898; and that this machine was immediately and repeatedly thereafter successfully operated.

Testimony was taken which showed that the allegations of the parties were substantially correct, and that Felbel had anticipated his rival. Whereupon all the tribunals of the Patent Office concurred in awarding judgment of priority of invention in favor of Felbel, and Oliver has appealed.

It appears from the record that the claim of the issue was the second of 73, afterward enlarged to 83 claims, contained in Felbel's application; that it was not originally claimed by Oliver; but that it was suggested to the latter by the Patent Office in accordance with its practice, in view of Felbel's application then pending. The suggestion was accepted by Oliver; and this claim was added by him as an amendment to his original specification, with the distinct understanding that thereby he would be placed in interference with a rival claimant. Notwithstanding this, after the interference had been declared, Oliver repeatedly moved for its dissolution, on the ground that there was no interference in fact between the devices of the two parties, and that the issue, when properly construed, according to his construction of it, applied specifically to Felbel's device, but did not cover his own. And when his motions for a dissolution of the inter-

ference had been overruled, he urged that the claim of the issue was old, and was therefore wanting in patentable novelty.

None of these contentions received any favor from the examiner of interferences. But the board of examiners-in-chief, while affirming the decision of the examiner of interferences and awarding judgment of priority to Felbel, were of opinion that the claim was not patentable, and called the attention of the Commissioner to the fact. The Commissioner expressed no opinion as to the patentability of the claim, but stated that this could be considered by the primary examiner when the case should go back to him after the determination of the interference; and he affirmed the award of priority to Felbel.

*Mr. C. Clarence Poole* for the appellant.

*Mr. William W. Dodge* for the appellee.

Mr. Justice Morris delivered the opinion of the Court:

In view of this condition of the record, we are not sure that we have jurisdiction to determine the issue in this case. The authority conferred on this court by the act creating it is, in reference to interference cases appealed to it from the decision of the Commissioner of Patents, to review the action of the Commissioner determining the right of priority of two or more persons claiming the same patentable invention. In the sense of the patent law there can be no interference unless there is patentable invention and there are rival claimants of it. Patentability of the invention or device is a necessary prerequisite to a declaration of interference; and the patentability of an invention, in controversy, except under some extraordinary circumstances, is not an open question before us. It is necessarily assumed in the declaration of interference, and the parties are estopped from denying it. It would be absurd and inconsistent to make application for a patent for an alleged invention, and immediately thereafter,

when some one else claims the same invention, to argue against its patentability.

We understand the rules and the practice of the Patent Office to be in accordance with this requirement of law and right reason; and that no interference is ever declared between parties until there has been an adjudication of patentability. The absurdity of a declaration of interference, with a reservation at the same time of the question of patentability for future adjudication, would be, so far at least as this court is concerned, too glaring to be tolerated. Of course, it is always possible that, even after a *prima facie* adjudication of patentability, facts may be disclosed, in the course of interference proceedings or otherwise, which would make it the duty of the Patent Office to refuse a patent, notwithstanding the preliminary adjudication. And it may be admitted that, until the patent is actually issued, it is always competent for the Patent Office, with due regard to the rules of law, to vacate its adjudication for good and sufficient cause. But that there must be an adjudication of patentability, final to all ordinary intents and purposes, before this court can be called upon to determine the right of ownership as between rival claimants, we must regard as the demand of the statute. Otherwise, we would be trying moot causes, which it is not the province of any court of justice under our judicial system to try; or else we would be called upon to perform duties which are not judicial in their nature, and which, under our system of government, it is not competent for the legislature to impose upon judicial tribunals.

In the case now before us there would seem to be no final and definite adjudication of patentability of the invention or device in controversy. It is true that the primary examiner has passed upon it, and has adjudged it to be patentable. But the board of examiners has expressed a different opinion; and while that opinion has not the effect, under the circumstances and the rules of the Patent Office, of overruling the primary examiner, and the board can only call the attention of the Commissioner to the matter, which it has done, yet the Commissioner has virtually adopted the

suggestion, and has held the question of patentability in abeyance to be reconsidered by the primary examiner when the matter goes back to him.

It is, of course, competent for the Patent Office to regulate its business in its own way, and to determine for itself by its own rules when and in what order it will take up the questions which arise in the performance of its functions. But, as we have said, this court cannot be called upon to determine moot causes; and the present is no more than a moot cause, since upon the face of the record itself the question of patentability has been expressly reserved for further and future consideration.

This question, however, has not been raised by either of the parties to the cause; but, as it very greatly affects our jurisdiction, we are compelled to raise it ourselves, and to suggest the grave doubt which exists in our minds whether we can assume jurisdiction in cases like the present.

But assuming that we have jurisdiction, we do not see what there is here for us to adjudicate. The appellant has distinctly and in the most positive manner, in the course of his testimony in the cause, disclaimed all interest in the subject-matter of controversy. Upon his examination as a witness on his own behalf, this question was deliberately propounded to him by his own counsel:

     " Do you claim to be the inventor of a device or mechanism embracing the particular combination of parts or elements specified in the issue of interference, as you understand them ? "

     And his deliberate answer to the question was —

" I do not."

Now we do not see the necessity or propriety of seeking to force upon a man the paternity of an invention which he so positively repudiates. In all probability this statement was made for the purpose of procuring a dissolution of the interference; but it matters not what the purpose of the appellant was in making it. It is a positive declaration under oath that he never was the inventor of the matter in issue. This we think should settle the controversy. Taken in con-

nection with the appellant's contention before the Patent Office that the device of the claim was not patentable, it would show quite conclusively that the purpose of the appellant was rather to defeat his opponent than to procure a patent for himself.

Were we to go farther and to disregard this disclaimer of interest on the part of the appellant, we would still find that Felbel was the first and original inventor in this case, and not Oliver.

That Felbel's conception of the invention and all that he did in the way of reduction to practice antedated the conception of Oliver by several months, is abundantly proved, and we understand that it is not even contested by Oliver. But for the reason that Felbel was not diligent in coming to the Patent Office with an application, or in putting the invention on the market, and that in the meantime Oliver did put the invention on the market and promptly applied to the Patent Office for a patent, it is sought to bring this case within the ruling in *Mason* v. *Hepburn,* 13 App. D. C. 86, and *Warner* v. *Smith,* 13 App. D. C. 111. We, however, concur with the Commissioner of Patents and the other tribunals of the Patent Office in holding that this case falls rather within the ruling in the cases of *Esty* v. *Newton,* 14 App. D. C. 50; *McBerty* v. *Cook,* 16 App. D. C. 133, and the more recent case of *Roe* v. *Hanson* at the last term of this court. 19 App. D. C. 559. There was here no fraudulent concealment, no suppression of the invention to keep it from the public, no abandonment of it as of an unsuccessful experiment, no such unreasonable delay as to impose upon the claimant the burden of proof beyond a reasonable doubt. On the contrary, Felbel's delay in this instance does not seem to have been unreasonable under all the circumstances. He had placed his invention in the hands of the person to whom it was most natural for him to look to manufacture it for commercial use, which he was unable to do himself; and he withdrew it from him as soon as it became apparent to him that this person was not then disposed to take up the matter. He had constructed a practical operative

machine; the reduction to practice had been complete; and all that remained to be done for the security of his right was to make his application for a patent. Undoubtedly it was possible for him to have done this more promptly than he did; but the delay was not unreasonable.

The diligence required of an inventor is diligence rather in the reduction of his invention to practice than in application to the Patent Office or in manufacturing his device for public use. It is very true, as we held in *Mason* v. *Hepburn, Warner* v. *Smith,* and other cases, that delay long and unexplained, and yielding to activity only when the knowledge comes of the entrance of a rival on the field, is always presumptive evidence that what is claimed to have been reduction to practice was no more in fact than an unsatisfactory or abandoned experiment. But when reduction to practice has been satisfactorily shown, and there is no unreasonable or unexplained delay, there is no law that would bar the first or original inventor of his right. In order to give to delay the effect of destroying such a right, there must be some circumstance of concealment, suppression or abandonment of the invention.

Notwithstanding our intimation that this cause, as now presented, is not ready for the appellate action of this court, we have deemed it proper to state our opinion upon the merits in view of the fact that neither party has raised the question of jurisdiction and we desire under the circumstances to save them the expense and delay of another appeal. Upon the merits, assuming the question of patentability of the alleged invention to have been definitely solved, we think that there was no error in the decision of the Commissioner of Patents.

In cases of this kind we think the proper practice to be, that the Commissioner, reserving, if he so desires, the determination of the question of interference, should hold the cause until he has referred the question of patentability back to the examiner and there has been a definite adjudication of this latter question. Then, and not until then, his deter-

mination of the issue of interference would present a cause for our cognizance.

The clerk of the court will certify this opinion, and the proceedings in this court in the premises to the Commissioner of Patents, according to law.