53 CCPA

Eugene F. **SCHWARZENBEK** and John Turkevich, Appellants,

v.

Bernard L. **EVERING**, John R. Coley and William A. **Wilson**, Appellees.

**Patent Appeal No. 7490.**

United States Court of Customs and Patent Appeals.
April 7, 1966.
Rehearing Denied June 9, 1966.

John C. Quinlan, New York City, Arnold G. Gulko, Washington, D. C. (James W. Clement, Chicago, Ill., Marylin Klosty, New York City, Max Dressler, Chicago, Ill., of counsel), for appellants.

Arthur G. Gilkes, Edward B. Beale, Washington, D. C. (Malvin R. Mandelbaum, James H. Callahan, New York City, Douglas G. Brace, New York City, of counsel), for appellees.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

RICH, Acting Chief Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority of invention in interference No. 89,674 to Evering, Coley and Wilson, hereinafter Evering et al.

The interference involves an application of Evering et al., entitled "Oxidative

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

Reactivation of Platinum Hydroforming Catalysts," serial No. 601,073, filed July 30, 1956, as a continuation-in-part of application serial No. 292,294, filed June 7, 1952. Schwarzenbek and Turkevich, hereinafter Schwarzenbek et al., are involved on their application for "Reaction of Platinum and/or Palladium Catalysts," serial No. 294,707, filed June 20, 1952. Evering et al. are senior party as the result of the examiner having granted a motion to shift the burden of proof on the basis of the filing date of their parent application. The Evering et al. applications are assigned to Standard Oil Company (Indiana), hereinafter Standard, and the Schwarzenbek application to M. W. Kellogg Company,[1] hereinafter Kellogg.

The invention in issue relates to hydroforming, the process of converting petroleum naphthas, in a stream of added hydrogen in the presence of a catalyst at elevated temperature, to high octane gasoline or aromatic hydrocarbons through dehydrogenation and aromatization of the naphthas. One catalyst used in hydroforming comprises small amounts of platinum on alumina. Although such platinum-alumina catalysts tend to become temporarily deactivated by the deposition of carbonaceous material thereon during hydroforming, it has been found that the catalyst can be regenerated to restore its activity by oxidation with a diluted air stream at an elevated temperature to remove the carbonaceous material. In certain cases, as stated in the Schwarzenbek et al. application, the platinum-alumina catalysts "can be used for prolonged periods of time, including many regenerations with a diluted air stream and at an elevated temperature, before the activity of the catalyst for a specific reaction or process declines permanently." By the process of the invention, one reactivates a platinum-

1. On January 1, 1963, this company became, by merger, a division of Pullman Incorporated.

alumina catalyst whose activity has so declined by subjecting it to a first oxidative treatment for a period under a first set of conditions and then subjecting it to a second oxidative treatment under more severe oxidizing conditions.

The single count in issue, separated into numbered parts and with added emphasis for convenience in making future reference thereto, is reproduced below:

(1) A method of treating a deactivated, carbon-containing, platinum-alumina, hydroforming catalyst which has been subjected to *many* regenerations with a dilute air stream and has gradually accumulated residual carbon whereby its activity is impaired,

(2) which method comprises subjecting said deactivated catalyst to a first oxidative treatment at a temperature in the range of about 750 to 900° F. with a gas mixture containing more than about 0.5 and less than about 10 percent of oxygen for a period of time sufficient to remove readily combustible carbon, and then subjecting the catalyst to a second oxidative treatment with a gas mixture containing free oxygen under more severe oxidizing conditions than are employed in the first oxidative treatment, said second oxidative treatment being at a carbon-burning temperature not substantially higher than 925° F.

(3) for a period of time of at least about 15 minutes and sufficient to remove substantially all residual carbon and thereby to restore substantially the catalytic properties of the catalyst.

Neither party took priority testimony. However, Schwarzenbek et al. offered evidence including depositions of the applicants Evering, Coley and Wilson and certain other Standard employees and also exhibits from the records of Standard and its employees. The evidence relates to activities at Standard in connection with reactivation of platinum-alumina hydroforming catalysts, including the prosecution of certain patent applications.

Before the board, Schwarzenbek et al. apparently questioned the finding of support for the count in the Evering et al. parent application which resulted in the granting of the motion to shift the burden of proof. They were not successful on that issue, however, and now expressly state that they do not argue it before this court.

The sole issue that remains is whether Evering et al. have "disclaimed" the invention in issue and as a consequence are not entitled to prevail in the interference, as they have. In their brief, Schwarzenbek et al. summarize their position as follows:

* * * because of *disclaimers* made by appellees in their sworn oral testimony in the proceeding below, appellees do not belong in this interference at all, and are thus not entitled to prevail here on the basis of the filing date of *either* their parent *or* their continuation-in-part application.

In particular, Schwarzenbek et al. rely on oral testimony of Evering et al. as constituting a disclaimer. They point out that their counsel read the portion of the count beginning with "subjecting said deactivated catalyst to a first oxidative treatment" and extending to the end (see parts (2) and (3) above) and then elicited the following testimony.

Q922. Dr. Evering, did you and Coley and Wilson discover the method described by the words which I have just read? A. No.

Schwarzenbek et al. also urge that Evering "deliberately and expressly disclaimed the *entire preamble of the count apart from the single word 'many',*" relying on the following testimony elicited by their counsel:

Q925. Dr. Evering, in your view, did you and Coley and Wilson invent: "A method of treating a deactivated carbon-containing platinum-alumina, hydroforming catalyst which has been subjected to regeneration with a dilute

air stream and has gradually accumulated residual carbon whereby its activity is impaired * * * "?

To help you in answering that question I call your attention to the fact that I read it largely from the first five lines of Schwarzenbek Deposition Exhibit 3 and omitted to read the word "many". A. Will you read me the question again, please.

Q925. (Read by the Reporter.)

*By the Witness:*

A. No, but if there are not "many" regenerations, it is hard for me to say how a gradually accumulated residual carbon can be built up on the catalyst.

Topping that testimony of Evering with the contention that the preamble, including particularly the word "many," has no effect on the method of the count, Schwarzenbek et al. reach the conclusion that Evering's testimony constitutes a disclaimer of the entire count.

In their brief, Schwarzenbek et al. discuss at length the evidence of activities of other Standard workers, including particularly Schmitkons and Shields, who worked on reactivation of platinum-alumina catalysts during approximately the same period as Evering et al. and filed a patent application on that subject on the same date the parent Evering et al. application was filed. They also discuss the file histories of the concurrently filed applications, including action and comments before the Patent Office in response to a Patent Office requirement that a line of division be maintained between the subject matter claimed in the two applications.[2] Schwarzenbek et al. seem to imply that the aforementioned evidence leaves a question whether Schmitkons and Shields were not the inventors of the subject matter in issue instead of Evering et al. However, they state that third party inventorship is not being raised[3] and that reference has been made to the work of Schmitkons and Shields merely to help refresh the recollection of Evering et al. as to what they considered the gist of their invention and to "help show that Dr. Evering's sworn disclaimer in his oral testimony was *no precipitate, poorly thought out or inadvertent statement,* but an act as deliberate and knowing as it could possibly be."

The board found there was neither an implied nor an express disclaimer of the count, resulting in Evering et al. being adjudged prior inventors on the basis of the filing date of their parent application. After discussing the evidence relating to the activities and application of Schmitkons and Shields, to statements made by counsel which emphasized the significance of carbon contents of the catalyst not set out in the count in distinguishing the invention of the parent Evering et al. application from that claimed by Schmitkons and Shields, and to testimony of Evering and his co-applicant Coley confirming some of counsel's statements, the board stated:

It is our opinion that a disclaimer cannot be inferred from statements or testimony with respect to some different process or about some other matter. In other words, a disclaimer of the process of the count cannot, in our view, be made inadvertently. We believe that a disclaimer on the part of Evering *et al.* would require a clear statement or averment by them or on their behalf which relates directly to the count of this interference. It is our opinion that this is the minimum

---

2. One point of Schwarzenbek et al. is that particular carbon contents of the catalyst disclosed in the Evering et al. application, but not set out in the present count, were relied on as distinguishing the invention thereof from that of Schmitkons and Shields.

3. An attempt to establish third party inventorship could avail Schwarzenbek et al. nothing in this proceeding since, as they concede in their brief, "a party to an interference who is otherwise entitled to priority may not be defeated by his adversary on the basis of proof that the invention was in fact made by a third party, a stranger to the interference * * *." Also see Foster v. Antisdel, 14 App.D.C. 552; Mortsell v. Laurila, 301 F.2d 947, 49 CCPA 1028.

that would be required in order that the holdings in Oliver v. Felbel [20 App.D.C. 255, 1902 C.D. 565] and Townsend v. Corey [1905 C.D. 548] be applied here. In the absence of any direct statement about the process *as fully defined in the count* we find no basis in the evidence of a disclaimer of the count by Evering *et al.* In the old classical theory of a patentable combination, all of the elements, alone or separately, were presumed to be old. Obviously, an inventor could disclaim each element separately, while still asserting his right to claim the combination.

With respect to the charge that there has been an express disclaimer, the board further commented:

> The record indicates that Evering *et al.* contemplate that their invention includes subjecting a deactivated carbon-containing catalyst to the recited two stage oxidation only after the catalyst has undergone a number of cycles of hydroforming and mild oxidative treatment so that some refractory, hard to remove carbon has accumulated thereon. It is clear from the answers given by Evering to questions 923 to 926 * * * that subjecting the catalyst first to a number of cycles of hydroforming and mild regeneration is essential to the Evering *et al.* invention and that Evering *et al.* consider such a process distinctly different from a process which involves merely subjecting a deactivated hydroforming catalyst to simple two stage oxidation. It is quite evident to us that Evering, when he denied that the [sic] Evering *et al.* had invented the broad two step oxidative catalyst reactivation method, had no intention of disclaiming the method of the count of interference. In this respect the situation here is similar to that in Fishburn et al. v. Vincent, 24 CCPA 1079, 33 USPQ 156, 88 F(2d) 711, cited by Evering *et al.*, where the court held that the appellee (Vincent) had no intention of disclaiming the count and that the situation there differed

from situations "which involved an unqualified disclaimer of the invention set forth in the counts."

We have carefully considered the testimony and exhibits offered in evidence and we fail to find therein any deliberate and unequivocal disclaimer of the *method of the count of interference.* The testimony alleged by Schwarzenbek *et al.* to constitute the disclaimer by Evering *et al.*, does not relate directly to the method as defined in the count, but to a method which is substantially different therefrom. As we pointed out above, we are of the opinion that a disclaimer of the subject matter of the count cannot be inferred by statements made with respect to other and different methods, particularly where it is evident that no such disclaimer was intended.

■ We find no error in the board's position. While the argument of Schwarzenbek et al. here emphasizes the testimony of Evering as constituting a disclaimer, with the other evidence relating to prosecution history of the patent applications and the activities of Schmitkons and Shields as supporting circumstances, the reasoning of the board clearly demonstrates the invalidity of that argument. It is clear that neither Evering nor his co-inventors stated or intended to state that they did not invent the subject matter defined by the count. Rather, they and their assignee have continuously prosecuted the interference with the obvious goal of prevailing on priority and ultimately obtaining a claim corresponding to the count in a patent issuing on their application. Schwarzenbek et al., not having overcome the record date of Evering et al., cannot be adjudged prior inventors on the basis of actions or statements of the senior party which are neither a deliberate disclaimer of the entire subject matter defined by the count nor a clear averment that they are not the inventors of the subject matter so defined.

The cases of Oliver v. Felbel (C.A. D.C.1902), 20 App.D.C. 255, 1902 C.D. 565, and Townsend v. Corey (Comm'r.

Pat. 1905), 1905 C.D. 548, are relied on by Schwarzenbek et al. here as they were before the board. Those cases may be precedent for awarding priority of invention, in appropriate circumstances, to the opponent of a party who does actually disclaim the subject matter of an interference.[4] However, they so differ factually from the present case that they furnish no reason for finding that there has been a disclaimer of the count in issue here. Thus, the basis for the court's finding of a disclaimer in the *Oliver* case was a deliberate negative answer by Oliver to the following question deliberately propounded to him by his own counsel during the taking of testimony:

> Do you claim to be the inventor of a device or mechanism embracing the particular combination of parts or elements specified in the issue of interference, as you understand them?

In *Townsend,* the Commissioner of Patents ruled that judgment was properly awarded to the opponent of a party who stated in a signed stipulation that he "does not claim to be the inventor of the

subject matter of the interference issue." Moreover, it seems clear that in both of the cited cases the interest of the party making the disclaimer was in preventing his opponent from obtaining the subject matter in issue rather than in getting it himself.

The board additionally considered the question of the weight to be given the word "many" in the introductory part of the count. Citing Kropa v. Robie, 187 F.2d 150, 38 CCPA 858, it concluded that the introductory phrase of the count including "many" is necessary to the definition of the process of the count. While we find no error in that conclusion, we think a separate ruling on the significance of the word "many" is unnecessary to the determination of the present controversy. Our finding that Evering et al. did not intend to disclaim *the subject matter defined in the count* and did not make a clear statement of disclaimer of *that subject matter* is enough to compel affirmance of the award of priority to them.

The decision is affirmed.

Affirmed.

---

4. It is noted that Rule 262 of the Rules of Practice of the Patent Office provides for judgment against a party to an interference who files a written disclaimer of the invention in issue "with the written consent of the assignee when there has been an assignment."